UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PETER SHAH,** <br><br> Plaintiff, <br><br> v. <br><br> **STATE BANK OF INDIA,** <br><br> Defendant. | Case No. 23–cv–23421–ESK–EAP <br><br><br> OPINION |

**KIEL, U.S.D.J.**

 **THIS MATTER** is before the Court on defendant's motion to dismiss (Motion) (ECF No. 21–1 (Mov. Br.)) *pro se* plaintiff's complaint (ECF No. 1 (Compl.)). Plaintiff filed an opposition to the Motion (ECF No. 23 (Opp'n)), to which defendant filed a reply (ECF No. 24). For the following reasons, the Motion is **GRANTED**.

 **I. BACKGROUND**

 Defendant is India's largest commercial bank with thousands of branches worldwide. (ECF No. 1–2 p. 12; ECF No. 21–2 ¶ 2.) Within the United States, defendant operates branches in California, Illinois, and New York. (ECF No. 1–2 p. 12; ECF No. 21–2 ¶ 7.)

 Plaintiff, a New Jersey resident, alleges to have "invested $35,000 in [India Development Bonds]" from defendant in 1992. (Compl. p. 4; ECF No. 1–2 pp. 2–8.) Each bond lists plaintiff and non-party Deepak Shashikant Mehta as the holders. (ECF No. 1–2 pp. 2–8.) While plaintiff claims that he "subscribed to these … bonds via the State Bank of India, New York," and that they were "issued by the State Bank [o]f India, New York" (Compl. p. 4), the bonds indicate that they were issued by the "State Bank of India, NRI Branch,

P.B. No. 9951, Tulsiani Chambers, 1st Floor, 212, Nariman Point, Bombay-400 021, INDIA" (ECF No. 1–2 pp. 2–8).  The bonds also provide that:

> THIS CERTIFICATE CONSTITUTES AN OBLIGATION OF, AND IS PAYABLE AT, THE BANK'S ISSUING OFFICE IN INDIA AND DOES NOT CONSTITUTE OR REPRESENT AN FDIC INSURED DEPOSIT AT ANY U.S. OFFICE OR SUBSIDIARIES OF THE BANK.

(*Id.*)

Due to not having received his principal or interest on the bonds, plaintiff sought relief against defendant in India in 2004.  (Compl. p. 4; ECF No. 1–2 p. 12.)  His efforts were to no avail, and, to date, he has yet to receive a return on the bonds.  (Compl. p. 4; ECF No. 1–2 p. 12.)  Accordingly, on December 29, 2023, plaintiff commenced this action against defendant "for fiduciary duty violations, breach of contract, and failure to pay the promissory notes."  (*Id.* p. 6.)  Plaintiff is seeking $300,000 for his principal deposit/interest and $900,000 in punitive damages.  (*Id.* pp. 4, 6.)

On March 22, 2024, defendant filed the Motion claiming that dismissal is warranted because the Foreign Sovereign Immunities Act (FSIA) strips this court of subject matter jurisdiction.  (Mov. Br. p. 9.)  *See* Fed.R.Civ.P. 12(b)(1), (2).  Defendant also argues in the Motion that the court lacks personal jurisdiction, the statute of limitations has expired, Deepak Shashikant Mehta is an indispensable party that plaintiff failed to name as a co-plaintiff, and plaintiff fails to state a claim.  (Mov. Br. p. 10.)  *See* Fed.R.Civ.P. 12(b)(2), (6), (7).  In opposition to the Motion, plaintiff asserts that there is no jurisdictional or time "bar to pursue [his] claims in the United States."  (Opp'n pp. 9–14, 18.)  While plaintiff indicates that he would amend his complaint "if given the opportunity" to do so, plaintiff argues that he sufficiently pleaded "when, where, and how [he] was robbed" and was not required to name Deepak Shashikant Mehta as his co-plaintiff.  (*Id.* pp. 14, 15.)

## II. DISCUSSION

### A. Subject Matter Jurisdiction

#### 1. Legal Standard

Since federal courts are courts of limited jurisdiction, a party seeking to invoke the court's jurisdiction bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). While "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it," Federal Rule of Civil Procedure (Rule) 12(b)(1) enables a party, as here, to move to dismiss a complaint for lack of subject matter jurisdiction. *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010).

A motion to dismiss pursuant to Rule 12(b)(1) may attack subject matter jurisdiction facially or factually. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A factual attack challenges the allegations supporting the assertion of jurisdiction, which permits a court to weigh evidence outside of the pleadings and places the burden of proof on the plaintiff to demonstrate that jurisdiction exists. *Id.* A facial attack does not dispute the facts as alleged and essentially applies the Rule 12(b)(6) standard. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 221 (D.N.J. 2022).

#### 2. The FSIA

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). The FSIA defines the term "foreign state" to include "a political subdivision … or an agency or instrumentality of a foreign state," and further specifies that an "agency or instrumentality of a foreign state" includes, *inter alia*, "an organ of a foreign state or political subdivision thereof." 28 U.S.C. §§ 1603(a), (b).

3

Under the FSIA, a foreign state is "presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Subject matter jurisdiction under the FSIA exists only "[i]f one of the specified exceptions to sovereign immunity applies … but if the claim does not fall within one of the exceptions, federal courts lack subject matter jurisdiction." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983). A defendant seeking dismissal for lack of subject matter jurisdiction under the FSIA must first present a prima facie case that it is a foreign sovereign. *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1285 (3d Cir. 1993). Once the defendant meets this threshold, "the burden then shift[s] to the plaintiff[] to establish that one of the exceptions to immunity applie[s]." *Id.*

### 3. Defendant's Sovereign Immunity Under the FSIA

#### a. Foreign State

Plaintiff alleges that because the bonds he purchased from defendants "were paid in U[nited] S[tates] currency" and "the majority of the money was raised in the United States," with the proceeds being "promised to be paid in U[nited] S[tates] currency," defendant is not a foreign state under the FSIA. (Opp'n p. 10.) Defendant was, however, created by the Indian Parliament to provide "a state-controlled and state-sponsored organ for a banking system." (ECF No. 21–2 ¶ 4.) Since defendant's inception in 1955, its "majority stake … has been owned and controlled directly by the Indian Government." (*Id.* ¶ 5.) Given that federal courts throughout the country have recognized defendant as a "foreign state," and plaintiff failed to proffer any contrary evidence (*see* ECF No. 24 pp. 6, 7), I find that defendant is presumptively immune from this action. *See, e.g.*, *Bhattacharya v. State Bank of India*, 70 F.4th 941, 945 (7th Cir. 2023) (holding that the district court correctly "agreed with both parties … [when]

4

f[inding] that the FSIA applies to the State Bank of India because the Indian government is the Bank's majority shareholder"); *Gosain v. State Bank of India*, 414 Fed. App'x 311, 313 (2d Cir. 2011) (stating "[t]here is no dispute that the [State Bank of India] defendants are eligible for immunity under the FSIA as instrumentalities of India"); *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932, 941 (7th Cir. 1996) (finding the State Bank of India is a "foreign state" under the FSIA); *Goel v. Am. Digital Univ., Inc.*, No. 14–01042, 2017 WL 1082458, at *14 (S.D.N.Y. Mar. 21, 2017) (rejecting argument that State Bank of India is not a foreign state under the FSIA).

### b. <u>Commercial-Activity</u>

Plaintiff invokes the commercial-activity exception. *See* 28 U.S.C §1605(a)(2). Under the commercial activity exception, a foreign state lacks immunity under the FSIA when

> the action is based (1) upon a commercial activity carried on in the United States by the foreign state; or (2) upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

*Id.* "'Commercial activity' can be either 'a regular course of commercial conduct' or 'a particular commercial transaction or act.'" *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 252 (3d Cir. 2022) (quoting 28 U.S.C. §1603(d)). "[C]ommercial activity is 'carried on in the United States' … if it has 'substantial contact' with this country." *Id.* (quoting 28 U.S.C. §1603(e)). However, the fact that a foreign state engaged in a commercial activity within the United States does not automatically compel the application of the commercial-activity exception. *See Saudi Arabia,* 507 U.S. at 357. Instead, "[t]he commercial character of an activity shall be determined by reference to

5

the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d).

The commercial activity exception entails a two-step analysis. "First, we ask whether there is a 'sufficient jurisdictional connection or nexus between the commercial activity and the United States'—in other words, whether the foreign state has engaged in conduct that satisfies one of the three clauses of § 1605(a)(2)." *Aldossari ex rel. Aldossari*, 49 F.4th at 252 (quoting *Fed. Ins. Co.*, 12 F.3d at 1286.) "Second, we look to see if there is a 'substantive connection or nexus" between the relevant commercial activity or act and "the subject matter of the cause of action'—that is, whether the cause of action is 'based upon' the relevant commercial activity or 'act … in connection with a commercial activity.'" *Id.* (first quoting *Fed. Ins. Co.*, 12 F.3d at 1286) (second quoting 28 U.S.C. § 1605(a)(2)). "[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015).

The gravamen of this action concerns defendant's alleged failure to pay plaintiff his return on the bonds. (*See* Compl. p. 4.) While plaintiff concedes that the bonds "were issued in India by a[] … non-resident Indian[] branch" and that the bond certificate states that "it is payable at[] the bank's issuing office in India," plaintiff argues that "payable in India" is a "fictious term." (Opp'n p. 10 n. 4.) Plaintiff asserts that because defendant "carried out and actively engaged in commercial activities by offering [bonds] in the United States" that "upon maturity, the proceeds … were to be in American currency," a direct effect in the United States exists and "[s]overeign [i]mmunity is not in play." (*Id.* pp. 10, 12, 19.) In support of this position, plaintiff points to a letter he received from defendant's New York branch "enclosing an application form … to open Foreign Currency Non-Resident …, Non Resident External …

6

or Non Resident Non Repatriable … accounts." (ECF No. 1–2 p.10; Mov. Br. p.18.)

I find that these activities have far too unsubstantiated an impact on the United States to satisfy the direct effect and substantiality requirements of the exception. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (finding that jurisdiction under the commercial activity exception "may not be predicated on purely trivial effects in the United States"). "[F]inancial injury to a U[nited] S[tates] citizen alone will not be sufficient 'unless the foreign state has performed some legally significant act here.'" *Bhattacharya v. State Bank of India*, No. 20–03361, 2022 WL 4482764, at *5 (N.D. Ill. Sept. 27, 2022), *aff'd*, 70 F.4th 941 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 682 (2024) (quoting *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 582 (7th Cir. 1989)); *see Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 139 (2d Cir. 2012) (holding that "[i]n cases involving the default by a foreign state or its instrumentality on its commercial obligations, an act has a direct effect in the United States if the defaulting party is contractually obligated to pay in this country").

All actions taken in connection with the underlying bonds occurred not in the United States but in India. Defendant is owned and controlled directly by the Indian government, and its principal place of business is Mumbai. (ECF No. 21–2 ¶¶ 3, 4.) While defendant operates a branch in New York, the bonds plaintiff purchased expressly provide that they were issued in India and were payable only at the issuing office in India. (ECF No. 1–2 pp.2–8.) Furthermore, the letter plaintiff points to as evidence of a "direct effect," is undated and is merely addressed to "Customer" without any indication that plaintiff was the directed recipient. (*Id.* p.10.) Hence, beyond demonstrating his own financial loss, plaintiff fails to demonstrate or introduce evidence showing that defendant's conduct had any direct effect in the United States.

7

*See Bhattacharya*, 70 F.4th at 944–45 (determined that because the plaintiff's breach of contract claim was related to a "non-resident account … maintained in India, and the relevant transactions were with the [State Bank of India's] India-based branches," the plaintiff failed to "allege that his suit related to any account held with a U[nited] S[tates] based branch of the [State Bank of India] or was otherwise related to any actions the [State Bank of India] had taken here").

### c.  Waiver

Plaintiff argues in passing that because "defendant agreed to have … disputes [concerning the bonds] adjudicated in … U[nited] S[tates] Courts … [defendant] is not immune."  (Opp'n p.12.)  While not articulated as such, I interpret this assertion as plaintiff invoking the waiver exception.  *See* 28 U.S.C. §1605(a)(1).

"A foreign state is not immune if it has 'waived its immunity either explicitly or by implication.'"  *Aldossari ex rel. Aldossari*, 49 F.4th 236 at 250 (quoting U.S.C. § 1605(a)(1)).  "The text of the FSIA does not specify the standard for identifying a waiver, but [the Third Circuit has] join[ed] "the virtually unanimous precedent" from [its] sister circuits that construes the waiver exception strictly and requires 'strong evidence'—in the form of 'clear and unambiguous' language or conduct—that the foreign state intended to waive its sovereign immunity."  *Id.* (quoting *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021).  In such cases, the waiver must be "unequivocally expressed" and read "narrowly, in favor of the government" or foreign sovereigns.  *Id.* (first quoting *United States v. Craig*, 694 F.3d 509, 511 (3d Cir. 2012)) (second quoting *Doe v. United States*, 37 F.4th 84, 86 (3d Cir. 2022)).

Plaintiff points to the terms of offer of the bonds to demonstrate that defendant waived immunity.  (ECF No. 23 pp.28, 29.)  I, however, find no language in the terms of offer that sufficiently establishes waiver.  *Cf. Poddar*

8

*v. State Bank of India*, 79 F. Supp. 2d 391, 393 (S.D.N.Y. 2000) (finding that because the terms of offer states that "[t]he Courts in India and the United States of America only shall have jurisdiction in respect of all matters of disputes about the [bonds]," the State Bank of India had drafted a mandatory forum selection clause consenting to be sued in the United States).

### B.     Defendant's Remaining Arguments[1]

Since this Court does not have subject matter jurisdiction over this action, the remaining aspects of the Motion need not be addressed.  *See Hoffman v. Nordic Naturals, Inc.*, 837 F. 3d 272, 277 (3d Cir. 2016) ("[A] federal court may not rule on the merits of an action without first ascertaining whether it has subject matter jurisdiction."); *Rothman v, New Jersey*, Case No. 19-13011, 2020 WL 409757, at *2 (D.N.J. Jan. 24, 2024) (declining to reach the merits of the plaintiff's claims in considering a motion to dismiss for lack of subject matter jurisdiction).

### III.  CONCLUSION

For the reasons set forth above, I find that the Court lacks subject matter jurisdiction over this action.   Accordingly, the Motion is **GRANTED**.

                                                    */s/ Edward S. Kiel*
                                                    **EDWARD S. KIEL**
                                                    **UNITED STATES DISTRICT JUDGE**

Dated:  November 25, 2024

---

[1] Without discussing the merits of defendant's argument as the expiration of the statute of limitations, I note that this issue may warrant a choice of law analysis and discussion as to whether the relief plaintiff sought in India in 2004 bars him from seeking relief in the United State.   (*See* Compl. p.4; ECF No. 1–2 p.12).   Of note, plaintiff's bonds matured in 1997, but he waited 20 years to file this action.   (ECF No. 1–2 pp. 2–8; ECF No. 21–1 p. 41.)